IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| INDUSTRIAL RISK INSURERS, an unincorporated Association of member companies, and NASH FINCH COMPANY, a Delaware corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>D.C. TAYLOR COMPANY, an Iowa Corporation,<br><br>Defendant. | No. C06-0171<br><br>ORDER REGARDING DISCOVERY |

This matter comes before the Court on the Motion to Compel Witness's Testimony and Production of Records in Response to Subpoena Duces Tecum (docket number 40) filed by Defendant D.C. Taylor Company on March 7, 2008, and the Motion for Protective Order (docket number 44) filed by non-party West Side Salvage on March 21, 2008. Pursuant to Local Rule 7.c, the Motions will be decided without oral argument.

## *BACKGROUND FACTS*

On November 28, 2006, Plaintiffs Industrial Risk Insurers ("Industrial Risk") and Nash Finch Company ("Nash Finch") filed a Complaint (docket number 1), claiming entitlement to recover judgment from Defendant D.C. Taylor Company ("D.C. Taylor") for damages sustained in a fire on August 13, 2004. It is alleged that D.C. Taylor was performing roof repairs on the Nash Finch building at that time and that the fire was caused by D.C. Taylor's negligence. Industrial Risk paid Nash Finch for a portion of its loss and is, therefore, subrogated to that portion of the claim. It is alleged that the total damages exceeded $600,000.

1

Following the fire, Nash Finch contacted West Side Salvage ("West Side"), which is a business involved in salvaging inventory following a loss. While a "very minimal percent" of West Side's business is in the food industry, it was contacted by Nash Finch to salvage the "dairy section" of the store, including "yogurts, cheese, lunch meats, different things as such." West Side rented a number of refrigerated trailers and took possession of the inventory. After four or five days, the inventory was transferred to a cold storage facility in Iowa City.

On March 3, 2008, Defendant's counsel took the deposition of Eugene L. Schwers, President of West Side Salvage. Schwers testified that West Side located a buyer for the inventory but, on the advice of counsel, refused to identify the buyer. Schwers testified that the product was sold as salvage to a "food brokerage service." At the request of the food brokerage service, West Side delivered the product to a third party. Schwers identified the third party as "a private grocery chain," but would not specifically identify it. In addition, some of the dairy products were destroyed due to their expiration dates. Schwers would not disclose how much the product sold for, but acknowledged that it was "greater than $20,000." While it is not entirely clear to the Court, West Side apparently received the entire proceeds from the sale of the product, in exchange for its services in hauling the product away. Schwers estimated West Side's expenses at approximately $12,000.

## *DISCUSSION*

In its Motion to Compel, D.C. Taylor requests that the Court enter an order pursuant to FEDERAL RULE OF CIVIL PROCEDURE 37(a)(3)(B)(i), compelling Schwers to respond to questions regarding who purchased the product and what was paid. In its Motion for Protective Order, West Side requests that a protective order be entered pursuant to FEDERAL RULE OF CIVIL PROCEDURE 26(c)(1)(G), providing that it not be required to disclose the commercial information sought by D.C. Taylor.

Initially, D.C. Taylor argues that West Side failed to follow the appropriate procedure for refusing to answer a question in an oral deposition, as set forth in FEDERAL

RULE OF CIVIL PROCEDURE 30(c)(2), and therefore cannot seek a protective order at this time. Rule 30(c)(2) provides, in part, as follows:

> A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

FED. R. CIV. P. 30(c)(2). *See also Pucket v. Hot Springs School Dist.*, 239 F.R.D. 572, 579 (D.S.D. 2006).

Rule 30(d)(3) provides, in turn, as follows:

> Motion to Terminate or Limit.
> (A) Grounds. *At any time during a deposition*, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.
> (B) Order. The court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c). If terminated, the deposition may be resumed only by order of the court where the action is pending.
> (C) Award of Expenses. Rule 37(a)(5) applies to the award of expenses.

FED. R. CIV. P. 30(d)(3) (emphasis added).

West Side did not immediately seek an order limiting the scope of the deposition. The deposition was held on March 3, 2008, D.C. Taylor filed its Motion to Compel on March 7, 2008, and it was not until March 21, 2008, that West Side filed its instant Motion for Protective Order. Generally, "the party who instructs the witness not to answer should *immediately* seek a protective order." *Paparelli v. Prudential Ins. Co. of America*, 108 F.R.D. 727, 731 (D. Mass. 1985) (emphasis in original).

D.C. Taylor has not cited any case, however, which holds that a party has waived its right to assert a claim for protective order under Rule 26(c), by its failure to file a motion to limit the deposition, pursuant to Rule 30(d)(3). Accordingly, the Court finds

3

that it is appropriate to consider West Side's Motion for Protective Order and determine whether or not the disputed information can be discovered and, if so, whether it should be held confidential.

Rule 26(c)(1)(G) provides that upon application by "any person from whom discovery is sought," the Court may, for good cause, issue an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." West Side argues that information regarding the purchaser of the product and the price paid for the product "qualifies as commercial information deserving of protection, and may rise to the level of trade secret." *See* Brief in Support of Motion for Protective Order (docket number 44-3) at 3.

West Side has the initial burden of showing that the information constitutes a trade secret or commercial information. *In Re Remington Arms Co., Inc.*, 952 F.2d 1029, 1032 (8th Cir. 1991). The burden then shifts to D.C. Taylor "to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial." *Id.* If the Court finds that the information is both relevant and needed, the Court must then weigh "the injury that disclosure might cause" against the party's need for the information. *Id.*

The Court believes that the information sought by D.C. Taylor constitutes "commercial information" held by West Side. One can easily conclude that information held by a salvage company regarding potential purchasers of product and the amount which will be paid for that product, is valuable to competitors and others. Accordingly, the burden shifts to D.C. Taylor to establish relevance and need. The Court concludes that the information is relevant to the issue of whether Plaintiffs properly mitigated their damages and is unavailable to D.C. Taylor from any other source. Therefore, the Court must weigh the injury that disclosure might cause to West Side against D.C. Taylor's need for the information.

At his deposition, Schwers testified that only a "very minimal percent" of West Side's business is in the food industry. Accordingly, the impact of disclosure on West

Side's business will be similarly limited. In addition, the injury to West Side, if any, may be minimized by a requirement that D.C. Taylor hold the information confidential. In its Motion to Compel, D.C. Taylor indicates that both it and Plaintiffs have indicated a willingness to enter into a stipulated protective order which protects the confidentiality of the requested information. In weighing these competing interests, the Court finds that an order compelling disclosure of the information, coupled with a protective order that limits further dissemination of the information by the parties, is the appropriate balance.

After considering all of the facts and circumstances, the Court declines to order sanctions, including attorney fees or costs.

## *ORDER*

IT IS THEREFORE ORDERED that the Motion to Compel (docket number 40) filed by D.C. Taylor on March 7, 2008, and the Motion for Protective Order (docket number 44) filed by West Side Salvage on March 21, 2008, are hereby **GRANTED** in part and **DENIED** in part, as follows: Eugene L. Schwers shall produce the documents and other information requested at his deposition. If necessary, the deposition may be reconvened for that purpose. Information regarding the purchaser of the product and the amount paid for the product shall be held confidential by Plaintiffs and Defendant, and shall not be disclosed to other persons or witnesses, without further application and order of the Court.

DATED this 7th day of April, 2008.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA